IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FRED BAVONE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:21cv1260 |
| | ) | **Electronic Filing** |
| **PRIMAL VANTAGE COMPANY, INC.** | ) | |
| a corporation, **PLANO SYNERGY** | ) | |
| **HOLDINGS, INC.** a corporation trading | ) | |
| and doing business as AMERISTEP, INC., | ) | |
| **AMERISTEP, INC.** a corporation, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION**

Fred Bavone ("plaintiff") commenced this products liability action seeking redress for injuries sustained as a result of an allegedly defective "tree step" used by plaintiff to access a tree stand for deer hunting. Plaintiff claims that the step gave way, but he managed to catch himself from falling out of the tree, resulting in a torn biceps tendon and other accompanying injuries. Presently before the court are defendants' motion for summary judgment, (Doc. No. 38), as well as a Daubert motion, (Doc. No. 42), to exclude the testimony of plaintiff's expert. For the reasons set forth below, defendants' motion for summary judgment will be granted in part and denied in part. Defendants' Daubert motion will be denied.

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Rule 56 "'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party

who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). Deciding a summary judgment motion requires the court to view the facts, draw all reasonable inferences and resolve all doubts in favor of the nonmoving party. Doe v. Cnty. of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001).

The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. When the movant does not bear the burden of proof on the claim, the movant's initial burden may be met by demonstrating the lack of record evidence to support the opponent's claim. Nat'l State Bank v. Fed. Reserve Bank of New York, 979 F.2d 1579, 1581-82 (3d Cir. 1992). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a *genuine issue for trial*," or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Electric Industrial Corp. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(E)) (emphasis in Matsushita). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In meeting its burden of proof, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. The non-moving party "must present affirmative evidence in order to defeat a properly supported motion" . . . "and cannot simply reassert factually unsupported allegations." Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989). Nor can the opponent "merely rely upon conclusory allegations in [its] pleadings or in memoranda and briefs." Harter v.

2

GAF Corp., 967 F.2d 846, 852 (3d Cir. 1992); Sec. & Exch. Comm'n v. Bonastia, 614 F.2d 908, 914 (3d Cir. 1980) ("[L]egal conclusions, unsupported by documentation of specific facts, are insufficient to create issues of material fact that would preclude summary judgment."). Likewise, mere conjecture or speculation by the party resisting summary judgment will not provide a basis upon which to deny the motion. Robertson v. Allied Signal, Inc., 914 F.2d 360, 382-83 n.12 (3d Cir. 1990). If the non-moving party's evidence is merely colorable or lacks sufficient probative force summary judgment may be granted. Anderson, 477 U.S. at 249-50; see also Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993) (although the court is not permitted to weigh facts or competing inferences, it is no longer required to "turn a blind eye" to the weight of the evidence).

The record as read in the light most favorable to plaintiff establishes the background set forth below. On the evening of October 19, 2017, Fred Bavone, an avid hunter, began descending a tree in Homer City, Pennsylvania using a series of plastic Ameristep strap-on tree steps Model 105/155. As he placed his foot onto the highest step to exit his tree stand, the step cracked and gave way ("the subject tree step"). He instinctually reached up and grabbed onto a hook used to hang hunting equipment that he had previously attached to the tree. Fortunately, the hook supported his weight long enough that he was able to regain his footing and safely climb down to the ground.

At his deposition, Mr. Bavone testified that he had used Ameristep Model 105/155 tree steps many times over the preceding twenty years and that he was familiar with how the steps should be used. At the time of this incident, he owned between 60 and 70 individual steps. He said that he habitually reviewed all instructional materials when buying new hunting equipment

but, since he was unsure on exactly when he had purchased the subject tree step, he could not say exactly when he would have viewed these particular materials. Although he was aware that the included instructions and warning labels stated that a separately purchased harness or fall assist device was to be worn while using the product, he was not tethered to the tree when the step broke.

Plaintiff hired materials scientist James U. Derby ("Derby") to assist in determining whether a manufacturing defect had caused the tree step to fail. Derby performed FTIR analysis on the subject tree step and used a stereo microscope to examine the fracture surfaces at varying levels of magnification ranging from 10x to 100x. Both types of fractographic analyses were nondestructive. Derby also cited several peer-reviewed scholarly works relating to glass fiber reinforced nylon, injection molded nylon, and fracturing of polymer materials in his report. Based on his observations and analysis, Derby determined that the subject tree step was made of the glass fiber composite Nylon 6. He also concluded that the subject tree step contained two different types of cracks, which he described as follows:

> The first type of crack can be called the primary crack which caused separation of the plastic tree step allowing the strap to disengage. The second type of cracks are the many smaller cracks which can be referred to as secondary cracks which were in the interior of the plastic tree step and were exposed when the primary crack accelerated through the plastic tree step.

Derby Expert Report (Doc. No. 50-4) at 12. In regard to the primary crack, Derby conceded that he could not rule out exposure to ultraviolet light and weather as contributing factors that may have caused the external surface to become embrittled over time. He opined, however, that the secondary cracks were likely caused by a defect in the manufacturing process. Derby elaborated at his deposition:

4

> Let me give a response in that what I observed was two different types of cracks. The first was the primary crack which separated the tree step itself, but then as I took the fractured pieces and looked at them I saw a different type of crack which was these secondary cracks. So what happened is in the tree step, there was stress, there were already cracks in it before the failure that caused injury to Mr. Bavone. Why those cracks were in there, I don't have any definitive analytical information to show, but they're clearly there. The primary crack that separated the pieces that uncovered many areas of secondary cracks which were already in the material.

Derby Deposition (Doc. No. 43-3) at 22.  Derby explained that the tree steps were produced using an injection molding process.  Generally, the exact specifications used to make injection molded products is proprietary.  Without access to this information, Derby was unable to definitively say what type of error in the manufacturing process would have caused the secondary cracks to form.  He was, however, confident that the secondary cracks could not have been produced by environmental factors alone since the cracks were found only on internal surfaces that would not have been exposed to the elements.  See id. at 53-54.

Defendants moved for summary judgment seeking dismissal of plaintiff's complaint in its entirety.  Defendants maintain that plaintiff failed to present sufficient evidence that the subject tree step was defective and further argue that plaintiff's alleged misuse bars any potential recovery.  Plaintiff counters that he has met his burden to show genuine disputes of material fact and that he should therefore be permitted to present his case to a jury.

For plaintiff to succeed on his strict liability, negligence, and breach of warranty claims, he must first demonstrate that the tree step was defective.[1]  See, e.g., Chandler v. L'Oreal USA,

---

[1] Plaintiff's strict liability claim is premised on both a manufacturing defect and failure to warn. See Plaintiff's Memorandum in Opposition (Doc. No. 48).  Plaintiff's negligence claim is primarily based on defendants' alleged failure to "discover the defect in the plastic strap-on tree step when Defendants knew or should have known that such a defect existed." Complaint in Civil Action (Doc. No. 1-2) at ¶ 13.  Thus, this claim parallels his manufacturing defect claim. As for plaintiff's breach of warranty claim, plaintiff has "produced no evidence of an express warranty, or that [he] communicated a particular purpose for the [subject tree step] to Defendants

Inc., 340 F. Supp. 3d 551, 561 (W.D. Pa. 2018), aff'd, 774 Fed. Appx. 752 (3d Cir. 2019) ("In order for Plaintiff to prevail on her strict liability, negligence, and breach of implied warranty claims, it is [their] burden to demonstrate that the [product] was defective.").

### A. The *Daubert* Inquiry

Defendants argue that plaintiff's expert testimony must be excluded because it is unreliable and is based purely on speculation. Under Federal Rule of Evidence 702, trial courts must act as "gatekeeper" and exercise discretion to preclude expert testimony that is unreliable, irrelevant, or unhelpful to the jury. Daubert v. Merrell Dow Pharms., 509 U.S. 579, 597, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). In the Third Circuit, district courts must focus on the "trilogy of restrictions on expert testimony: qualification, reliability and fit." Calhoun v. Yamaha Motor Corp., U.S.A., 350 F.3d 316 (3d Cir. 2003). Thus, district courts should permit expert testimony so long as (1) the expert has the necessary qualifications, (2) the testimony is based on scientifically valid methods, and (3) the testimony would assist the trier of fact in understanding the evidence or in resolving factual issues. See In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 741-43 (3d Cir. 1994).

In the instant case, Derby possesses the requisite qualifications. To qualify as an expert, the witness must possess specialized expertise, gained from "practical experience as well as academic training and credentials," in the relevant area. Jones v. Swepi L.P., 643 F. Supp. 3d 547, 561 (W.D. Pa. 2022) (quoting Waldorf v. Shuta, 142 F.3d 601, 625 (3d Cir. 1998)). Derby

---

at the time of purchase, as required for an implied warranty of fitness for a particular purpose." White v. Home Depot, Inc., 2018 U.S. Dist. LEXIS 79694, at *9 n.4 (E.D. Pa. May 9, 2018). Accordingly, plaintiff is "limited to an implied warranty of merchantability, which the Third Circuit Court of Appeals considers 'essentially the same' as the rule of strict products liability in Restatement (Second) of Torts § 402A." Id. See also Gumbs v. Int'l Harvester, Inc., 718 F.2d 88, 94-95 (3d Cir. 1983). Plaintiff's claims as so construed will therefore be addressed together throughout the remainder of this opinion.

has a bachelor of science in physics and a master's in ceramic science with a concentration on fractography of brittle materials. See Derby Deposition (Doc. No. 43-3) at 59. He also has years of industry experience running analytic laboratories and performing failure analysis. Id. at 59-60. He has worked for Robson Forensic since 2015 where he currently serves as the "primary material scientist with specialty [] in brittle materials." Id. at 60. Thus, Derby is qualified under Rule 702 to render opinions on the material and fracture pattern of the subject tree step.

Next, Derby's testimony is reliable. The reliability inquiry is a flexible one wherein the court must focus solely on the expert's chosen principles and methodology rather than the conclusions drawn from them. Daubert, 509 U.S. at 594-95. "In other words, the expert must have good grounds for the opinion, which must be based on the 'methods and procedures of science' instead of a 'subjective belief or mere conjecture.'" Jones, 643 F. Supp. 3d at 562 (quoting Daubert, 509 U.S. at 590)). Whether "good grounds" support an expert's potential testimony depends on various factors, including: "(1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put." See id. (quoting Pineda v. Ford Motor Co., 520 F.3d 237, 247-48 (3d Cir. 2008)).

Defendants argue that Derby's proffered testimony that the subject tree step was defective is purely speculative. Derby testified that he based his opinions on an analysis of the fractured

7

surfaces conducted in accordance with ASTM standards.[2]  Derby Deposition (Doc. No. 43-3) at 34.  While Derby acknowledged that he could have performed more tests, because his chosen methods had already confirmed his hypothesis, he ultimately felt additional testing was unnecessary.  Id. at 46, 56.  Defendants contend that to meet the reliability threshold, Derby would have had to perform additional analysis to account for, *inter alia*, human error, the angle at which plaintiff's foot was positioned on the step when it broke, and the position in which the step was attached to the tree.  But just because Derby, a material scientist, confined his analysis to matters pertaining only to the structural integrity and composition of the nylon material that comprises the tree step, does not mean that his analysis is inherently unreliable.  Derby was retained to determine whether the subject tree step was defectively manufactured, and his opinions are confined to that issue.  See id. at 9-10, 12-13, 15.  Accordingly, the court is satisfied that Derby's opinions are based on scientifically valid and reliable methods.

Finally, Derby's testimony fits because there are good grounds to believe that the testimony would help the jury decide a factual dispute.  "To determine whether an expert's testimony 'fits' the proceedings, [the trial court] asks whether it 'will help the trier of fact to understand the evidence or to determine a fact in issue.'"  UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres, 949 F.3d 825, 835 (3d Cir. 2020) (quoting FED. R. EVID. 702(a)).  "[A]dmissibility depends in part on 'the proffered connection between the scientific research or test result to be presented and particular disputed factual issues in the case.'"  In re Paoli, 35 F.3d at 743 (quoting U.S. v. Downing, 753 F.2d 1224, 1237 (3d Cir. 1985)).

---

[2]  Specifically, Derby cited ASTM procedure C-1161 Standard Test Method for Flexural Strength of Advanced Ceramics at Ambient Temperature.  See Derby Deposition (Doc. No. 43-3) at 34.

Derby's analyses and the conclusions drawn therefrom directly relate to a material fact at issue in this litigation, i.e., whether the subject tree step was defective. Defendants place a lot of emphasis on Derby's inability to pinpoint what exactly went wrong in the manufacturing process. That may well be relevant to the jury when assessing the weight of Derby's testimony, but it is not dispositive to the inquiry here. The question instead is whether there is "a clear, valid scientific connection" between Derby's opinions on the subject tree step and a disputed factual issue of the case. See Jones, 643 F. Supp. 3d at 563. The court concludes that Derby's testimony sufficiently "fits" and would likely aid the jury's understanding of whether the step was defective.

Therefore, having established that Derby is qualified to render his opinion, the chosen methods were sufficiently reliable, and there are good grounds to believe that the testimony would be helpful to the jury, plaintiff has met the foundational requirements for admission under Rule 702. Accordingly, defendants' *Daubert* motion will be denied.

## B. Evidence of Defect

It is well established that strict product liability claims in Pennsylvania are governed by the Restatement (Second) of Torts § 402A. See, e.g., Sullivan v. Werner Co., 2023 Pa. LEXIS 1715 (Pa. 2023) (citing Webb v. Zern, 220 A.2d 853, 854 (Pa. 1966)). To prevail, a plaintiff must prove that "the product was defective, the defect existed when it left the defendant's hands, and the defect caused the harm." Igwe v. Skaggs, 258 F. Supp. 3d 596, 609 (W.D. Pa. 2017) (citing High v. Pennsy Supply, Inc., 154 A.3d 341, 345-46 (Pa. Super. 2017)). A product may be found defective based on proof of a manufacturing defect, design defect, or failure-to-warn defect. Id. "Whether a product is in a defective condition is a question of fact ordinarily submitted for determination to the finder of fact; the question is removed from the jury's

9

consideration only where it is clear that reasonable minds could not differ on the issue."  Tincher v. Omega Flex, Inc., 104 A.3d 328, 335 (Pa. 2014).  Plaintiff asserts that the subject tree step is defective under both manufacturing defect and failure to warn theories of liability.[3]

### 1. Manufacturing Defect

Plaintiff argues that he produced sufficient evidence to show a manufacturing defect, and therefore, it is up to the jury to decide whether the tree step was defective.  "A manufacturing defect can be established by direct evidence of 'a breakdown in the machine or a component thereof' or by circumstantial evidence of a product malfunction as long as Plaintiff rules out abnormal use or secondary causes of the injury."  Chandler, 340 F. Supp. 3d at 564 (quoting Smith v. Howmedica Osteonivs Corp., 251 F. Supp. 3d 844, 851 (E.D. Pa. 2017)).

Much of defendants' arguments that plaintiff failed to produce evidence of a defect are almost entirely based on the alleged incompetency of plaintiff's expert testimony.  Having already concluded that Derby's testimony is admissible under Rule 702 and *Daubert*, there is no need to address these arguments further.  Additionally, defendants repeatedly attempt to invoke the reports of their own experts as a means of refuting plaintiff's expert.  But assigning weight to the testimony of experts is a function reserved for the jury, far beyond the scope of summary judgment review.  Anderson, 477 U.S. at 249 ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

---

[3]  Plaintiff's complaint also alleged that the tree step was defectively designed, but plaintiff subsequently abandoned this claim.  See Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment (Doc. No. 48) at 7 ("Plaintiff will not respond to this section of Defendants' motion in that Plaintiff is not alleging a design defect.").

Plaintiff's expert testimony that the subject tree step was defective directly contradicts defendants' expert testimony, and the issue must therefore go to the jury.[4]  It is reasonable to believe that a jury could find that the tree step was significantly weakened by the internal secondary cracks caused by a manufacturing error and that plaintiff would not have been injured absent the defect.  Thus, if believed by the jury, Derby's testimony would tend to show that the subject tree step was defective when it left defendants' hands and that it was the defect that caused plaintiff's injuries.  See Igwe, 258 F. Supp. 3d at 609.  Because there is a genuine dispute as to whether the secondary cracks rendered the tree step defective, defendants' motion for summary judgment must be denied as to the manufacturing defect.  Tincher, 104 A.3d at 335.

### 2. Failure to Warn

Plaintiff also contends that he has produced sufficient evidence of a failure-to-warn defect.  "Under § 402A, an otherwise properly designed product may still be unreasonably dangerous (and therefore 'defective') for strict liability purposes if the product is distributed without sufficient warnings to apprise the ultimate user of the latent dangers in the product." Pavlik v. Lane Ltd., 135 F.3d 876, 881 (3d Cir. 1998).  "The determination of whether a warning is adequate and whether a product is 'defective' due to inadequate warnings are questions of law to be answered by the trial judge."  Chandler, 340 F. Supp. 3d at 562 (quoting Davis v. Berwind Corp., 690 A.2d 186, 190 (Pa. 1997)).  "[T]he plaintiff must demonstrate that the user of the product would have avoided the risk had he or she been warned of it by the seller."  Phillips v. A-Best Prods. Co., 665 A.2d 1167, 1171 (Pa. 1995).

"For the defendant-movant to prevail on summary judgment, 'the record must show that a reasonable fact finder would be bound to find that [the plaintiff] was fully aware of the risk of

---

[4]  Plaintiff has not challenged the testimony of defendants' experts at this time.

11

bodily injury before his injury; otherwise, we are presented with a genuine issue of fact for the jury.' Further, the plaintiff 'enjoys the benefit of a rebuttable presumption that an adequate warning would have been heeded if it had been provided.'" Whyte v. Stanley Black & Decker, Inc., 514 F. Supp. 3d 684, 700 (W.D. Pa. 2021) (quoting Pavlik, 135 F.3d at 881, 884).

Defendants argue that plaintiff's defective warning claim should be dismissed because plaintiff failed to follow the warnings that were included with the tree step. It is undisputed that the tree step came with instructions on proper installation and that attached warning labels directed users to wear a harness or fall assist device. From defendant's perspective, had plaintiff followed these instructions he would not have been injured. Thus, according to defendants, it was plaintiff's own misuse of the product, and not the alleged lack of any warnings, that caused his injury.

But defendant's focus in attacking plaintiff's failure-to warn claim is misdirected. Plaintiff does not mount a challenge to the adequacy of what was written in the subject tree step's warnings; instead, he focuses on the product's lack of warnings. And the lack of a particular warning can form the basis for liability. See Phillips, 665 A.2d at 1171 ("To establish that the product was defective, the plaintiff must show that a warning of a particular danger was either inadequate or altogether lacking, and that this deficiency in warning made the product 'unreasonably dangerous.'").

Here, plaintiff highlights that nothing in the record suggests that consumers were warned of the potential for the subject tree step to crack and break in the manner that plaintiff seeks to prove. Nor does there appear to be any warning that failing to step on the step in the very precise manner described in defendants' briefing could result in the type of fracture and failure that plaintiff seeks to prove to the jury. There also does not appear to be any warnings regarding a

temporal limit on the regular use of the product or the impact of certain types of weather beyond an instruction advising consumers not to leave the product attached to a tree for longer than ninety (90) days at a time.

As previously mentioned, plaintiff testified at deposition that he habitually read all warnings and directions included with hunting equipment and that he remembered reading the warning label that was affixed directly to the subject tree step.  See Plaintiff's Deposition (Doc. No. 43-3) at 22-23, 31-34.  He also testified that he never left his tree steps in the woods year-round and would always remove the steps prior to the end of hunting season.  Id. at 28.  Upon removal, he would thoroughly dry all steps before storing them for the next year.  Id. at 28-29.  When he was ready to use the steps again, he would inspect each step to ensure that it was not compromised.  Id. at 28.  And while plaintiff did acknowledge that he understood that synthetic materials could deteriorate over time, his testimony establishes that the subject tree step displayed no visible indication of deterioration prior to his accident.  See id. at 45-46.

Based on this record evidence, a reasonable jury could find that the subject tree step's warnings were inadequate to inform plaintiff that the step might break even though plaintiff heeded all included instructions.  A reasonable jury could also determine that this inadequacy was the proximate cause of plaintiff's injuries.  See Whyte, 514 F. Supp. 3d at 699 (denying summary judgment because "a jury must weigh the evidence to determine whether the history, risk, and severity of [the plaintiff's] injury" rendered the product unreasonably dangerous absent additional warning labels).  Therefore, plaintiff has met his burden of showing a genuine dispute of material fact, and defendants' motion for summary judgment must be denied as to plaintiff's failure to warn claim.

13

### C. Plaintiff's Alleged Misuse

Having determined that plaintiff has met his threshold burden of showing that there are genuine disputes of material fact regarding whether the subject tree step was defective, the court must now consider defendants' contention that plaintiff's alleged misuse bars his claims. Defendants argue that plaintiff's injuries happened solely because he improperly installed the subject tree step "where there was a depression in the bark and placed the tree step more than 90 degrees around the tree from the treestand [sic], which resulted in a lateral load to the tree, i.e., sideload of the step instead of on top of the step." Defendants' Memorandum in Support (Doc. No. 41) at 11. Defendants further contend that plaintiff misused the product by "failing to use the product with [plaintiff's] safety harness and [failing] to remain connected to the tree when climbing and descending[.]" Id.

Conversely, plaintiff argues that the record does not support defendants' allegation of improper installation. Additionally, plaintiff points out that his injuries were not caused by falling to the ground, rendering his failure to wear a safety harness at the time of the incident largely irrelevant because, from plaintiff's perspective, he would have sustained the same injuries even if he had been tethered to the tree. Thus, plaintiff asserts that there are genuine issues of material fact regarding any claimed misuse or improper use.

The court agrees with plaintiff that genuine issues of material fact regarding how the subject tree step was installed preclude summary judgment in defendants' favor. As with defendants' arguments relating to the superiority of their own expert testimony, the factual discrepancies surrounding alleged use/misuse of the subject tree step fall outside the proper scope of review at the summary judgment stage. See Anderson, 477 U.S. at 249. That said, nothing prevents defendants from presenting these arguments to the jury.

D. **Conclusion**

Accordingly, defendants' motion for summary judgment [38] will be granted in part and denied in part. The motion will be denied as to plaintiff's manufacturing defect and failure-to-warn claims as construed herein. The motion will be granted as to all other claims plaintiff sought to raise in his complaint. Defendants' *Daubert* motion [42] will be denied. Appropriate orders to follow.

<u>Date: February 21, 2024</u>

                <u>s/David Stewart Cercone</u>
                David Stewart Cercone
                Senior United States District Judge

cc: Jeffrey D. Monzo, Esquire
   Milton S. Karfis, Esquire
   Vincent M. Roskovensky, Esquire
   Stephanie I.M. Anderson, Esquire
   Steven D. Brock, Esquire

   (*Via CM/ECF Electronic Mail*)